## W. D. GRIMES v. THE STATE.

### No. 3436. Decided March 3, 1915.

### Rehearing denied April 21, 1915.

**1.—Seduction—Sufficiency of the Evidence.**

Where, upon trial of seduction, the evidence sustained the conviction, there was no reversible error on that ground.

**2.—Same—Continuance—Rule Stated.**

The rule is that the refusal of a continuance will be upheld where it appears from the record that the facts alleged to be provable by the absent witness were known by defendant to be within the knowledge of witnesses who are in attendance on court, and who are not placed on the stand to prove such facts. Following Nolen v. State, 14 Texas Crim. App., 474, and other cases.

**3.—Same—Evidence—Birth of Child—Date—Leading Questions.**

Where, upon trial of seduction, the record on appeal showed, independent of the testimony of the prosecutrix, the date of the birth of the child, the conten-

tion that the court permitted counsel for the State to lead the witness in seeking to have the date correctly fixed, was untenable.

**4.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions do not show what the answer of the witness would have been to the question propounded, towit, whether the witness ever had any sexual desire, it can not be reviewed on appeal, and besides the witness had answered that she had had no sexual desire at the time the first act of intercourse took place. Following White v. State, 32 Texas Crim. Rep., 625. Davidson, Judge, dissenting.

**5.—Same—Remarks by Judge.**

Where the court overruled the objection to the question whether witness ever had any sexual desire, and instructed the witness to answer the question if she could, and the witness answered that she did not know how to answer it, the court's remark did not suggest the answer, and there was no reversible error.

**6.—Same—Flight—Evidence.**

On trial of seduction, there was no error in admitting testimony that when defendant learned that prosecutrix was with child, he fled the country, and that efforts were made to locate him by circulars mailed out, and that he was not arrested until three years thereafter.

**7.—Same—Evidence—Practices—Cross-examination.**

Where appellant contended that the trial judge stated, when counsel expressed a desire to recall the prosecutrix, that he could do so, but that the State had rested, and that this forced counsel to introduce her as defendant's witness, but the record showed that counsel was permitted to cross-examine the witness on her examination in chief as rigidly as he desired, there was no reversible error.

**8.—Same—Evidence—Repetition.**

Where defendant, after recalling the prosecuting witness, asked the question that he was not sure whether he asked witness if she didn't tell defendant that she was with child more than a year before the time she stated in her testimony in chief, as to the first time she had sexual intercourse with defendant, to which the court sustained an objection on the ground that it was simply a repetition of such question on witness' former examination, which was borne out by the record, there was no reversible error. Davidson, Judge, dissenting.

**9.—Same—Evidence—Date of Act of Intercourse.**

Where all the facts taken together fixed the time definitely when the first act of intercourse occurred, and that this was after the time the parties become engaged, and that prosecutrix yielded to the persuasions of defendant, believing the engagement would shortly merge into the marriage relation, the fact that the prosecutrix was somewhat indefinite in parts of her testimony as to said date, did not constitute reversible error. Davidson, Judge, dissenting.

**10.—Same—Requested Charge.**

Where, upon trial of seduction, the evidence sustained the conviction, there was no error in refusing a peremptory charge to acquit.

**11.—Same—Charge of Court—Definition of Seduction.**

Where, upon trial of seduction, the court gave a proper definition thereof, and submitted a charge applicable to the facts of the case, there was no reversible error. Davidson, Judge, dissenting.

**12.—Same—Accomplice—Charge of Court.**

Where, upon trial of seduction, the court's charge on accomplice testimony followed approved precedent, there was no reversible error. Following Campbell v. State, 57 Texas Crim. Rep., 301, and other cases.

**13.—Same—Misconduct of Jury.**

Where no proof was offered in regard to the allegation in the motion for new trial, alleging misconduct of the jury, and no such evidence was in the record, there was no reversible error.

**14.—Same—Want of Diligence—Continuance.**

Where the motion for continuance showed a want of diligence in procuring the absent testimony; that the same facts could have been proved by other witnesses in attendance; that no affidavits were attached to the motion for new trial showing that the absent witnesses would testify as claimed by the defendant, there was no error in overruling a motion for continuance, and the motion for new trial. Following Mitchell v. State, 36 Texas Crim. Rep., 278, and other cases.

**15.—Same—Remarks by Judge—Repetition—Evidence.**

Where, upon trial of seduction, appellant contended that the trial judge committed reversible error in the colloquy which occurred between appellant's attorney, the State's attorney, and the trial judge, when defendant's counsel asked the prosecuting witness if she was capable of experiencing sexual desire the first time she had sexual relations with the defendant, and another colloquy which occurred between said parties on the same subject the next day, and the record on appeal showed that said question was but a repetition of the same question, and the court's remarks thereon were not a comment upon the weight of the evidence, and at any event there was no reversible error. Following Newman v. State, 64 S. W. Rep., 258, and other cases. Davidson, Judge, dissenting.

**16.—Same—Rule Stated—Discretion of Court—Repetition.**

The trial court must necessarily have a large discretion in refusing to permit the asking of a witness over and over again the same question.

**17.—Same—Requested Charge—Promise of Marriage.**

Where, upon trial of seduction, the court's main charge fully submitted the law thereon, and that the prosecutrix must have consented solely on the ground of a promise to marry the defendant, and not on account of lust, passion, etc., there was no error in refusing a special charge on the same issue; besides, neither the requested charge nor the bill of exception to its refusal, stated when it was presented to the court for his action. Following Ross v. State, 72 Texas Crim. Rep., 611, 170 S. W. Rep., 305. And further, the requested charge was not properly drawn.

**18.—Same—Sufficiency of the Evidence.**

Where, upon trial of seduction, the evidence was sufficient, although conflicting, to sustain the conviction, there was no reversible error. Following Kearse v. State, 68 Texas Crim. Rep., 633. Davidson, Judge, dissenting.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of seduction; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*V. E. Middlebrook,* for appellant.—On question of continuance: Silvas v. State, 71 Texas Crim. Rep., 213, 159 S. W. Rep., 223; Brown v. State, 71 Texas Crim. Rep., 353, 162 S. W. Rep., 339; Hays v. State, 73 Texas Crim. Rep., 58, 164 S. W. Rep., 841.

On question of remarks of judge: Moore v. State, 33 Texas Crim. Rep., 306; Simmons v. State, 55 Texas Crim. Rep., 441; Walling v.

State, 59 Texas Crim. Rep., 279, 128 S. W. Rep., 624; Dean v. State, 58 Texas Crim. Rep., 98, 124 S. W. Rep., 924; MacMahan v. State, 61 Texas Crim. Rep., 489; Pope v. State, 170 S. W. Rep., 150.

On question of promise of marriage and refusal of defendant's requested charge thereon: Barnes v. State, 37 Texas Crim. Rep., 320; Simmons v. State, 54 id., 619; Muhlhause v. State, 56 id., 288; Garlas v. State, 48 id., 449; Gorzell v. State, 43 id., 82; Spenrath v. State, 48 S. W. Rep., 192.

*C. C. McDonald,* Assistant Attorney General, and *Blount & Strong,* for the State.—On question of refusal of requested charge on accomplice testimony: Nash v. State, 134 S. W. Rep., 709; Williams v. State, 59 Texas Crim. Rep., 347, 128 S. W. Rep., 1120, and cases cited in majority opinion.

On question of remarks by judge: Harrell v. State, 45 S. W. Rep., 581, and cases cited in majority opinion.

On question of overruling motion for continuance: Mitchell v. State, 36 Texas Crim. Rep., 278, and cases cited in majority opinion.

HARPER, JUDGE.—Appellant was convicted of the crime of seduction, and sentenced to four years confinement in the State penitentiary.

We do not deem it necessary to recite at length the facts in the case, as in our opinion the evidence fully sustains the verdict of the jury. In the first bill of exceptions appellant complains of the action of the court in overruling his application for a continuance. In the motion for continuance he moved to continue the case on account of the absence of some twenty-four witnesses. In the bill of exceptions and the court's order approving same, it appears that all the witnesses were in attendance on court during the trial of the case except three, and that appellant placed none of them on the stand as witnesses after their attendance had been secured. He states he expected to prove by Mrs. William Medford that she heard the prosecuting witness state to her mother that her illicit intercourse with defendant had been going on for four years. He states he expects to prove the same facts by Mrs. Alph Stone and Mrs. Rose Scott. The prosecuting witness, Miss Rebecca Stripling, and her mother, both testified on the trial of the case, and both denied that any such conversation had ever taken place between them. Mrs. William Medford attended court but was not placed on the stand by appellant to prove that any such conversation took place. The attendance of Mrs. Stone and Mrs. Scott was not secured. The rule is that the refusal of a continuance will be upheld where it appears from the record that the facts alleged to be provable by the absent witness were known by appellant to be within the knowledge of witnesses who are in attendance on court, and who are not placed on the stand to prove such facts. Nolen v. State, 14 Texas Crim. App., 474; Easterwood v. State, 34 Texas Crim. Rep., 400, and cases cited in sec. 644, White's Ann. Proc. In the motion it is also alleged that by the witnesses Luther Chandler, Melvin Pike, Lee Hand, Perkins Burrows, and Doug-

las Patton defendant expects to prove that they waited on the prosecuting witness and were acquainted with her age, and that she was more than twenty-five years old at the date of the alleged offense. All the above named witnesses, other than Douglas Patton, were in attendance on court and yet appellant introduced none of them as witnesses. As qualified and approved by the court he did not err in overruling the motion for a new trial on this ground.

It appears that the young lady got mixed in her testimony as to the year the baby was born, saying 1910, when the record discloses that the baby was born and indictment returned in 1911. It is complained that the court permitted counsel for the State to lead the witness in seeking to have the date correctly fixed. As the record as a whole, independent of her testimony, fixes these dates, the bill presents no error.

In bill No. 3 it is not shown what the answer of the witness would have been to the question propounded: "Did she ever have any sexual desire?" Consequently it can not be reviewed as it is too incomplete. White v. State, 32 Texas Crim. Rep., 625, and cases cited in subdiv. 5, sec. 1123, White's Ann. Proc. As the witness had answered she had not had any desire for sexual intercourse with defendant at the time the first act of intercourse took place, and she yielded to his persuasion and entreaties, relying on his protestations of love and affection and promise of marriage, we can not see the materiality of the testimony sought to be elicited, if the bill alleged the answer expected to be elicited. And neither can we see the materiality of the testimony sought to be elicited by the question: "if she was capable of experiencing the sexual desire the first time she had sexual relations with defendant?" As before stated, she had testified that she had no such desire, and did not yield to appellant through lust or passion, or any desire she felt. The court, however, overruled the objection to the question and instructed the witness to "answer the question if you can." The witness answered, "I do not know how to answer it." Appellant contends that the court's remark suggested the kind of answer for the witness to give, and that she gave the answer suggested. We do not know whether the average young lady could state whether or not "she was capable of experiencing the sexual desire" after she had testified that she had never had such desire. At least the bill should have stated what he expected to prove by the witness, and the object and purpose of such testimony, if admitted.

The record shows that when appellant learned that Miss Stripling was with child, he fled the country. This fact was admissible, as well as the efforts of Mr. Spradly to locate him, and the fact that he had mailed out circulars seeking to locate him, as well as the fact that it was three years before he was arrested. The contents of the circulars were not admitted, but only that circulars had been mailed, and the territory which had been covered by the circulars.

Appellant contends as the court stated, when he expressed a desire to recall Miss Stripling, "Very well, but the State had rested," that this forced the appellant to introduce her as his witness. The court, in

approving the bill, says: "This bill of exceptions is approved with the qualification that the statement of facts be referred to on this question, and further, that the witness did testify or was cross-examined by the defendant, and when the court made the statement to the defendant's counsel that the State has rested its case, if the court made such statement, it was merely to call the defendant's counsel's attention to such fact, in order that he might take up his side of the case." It is evident by this qualification of the bill and the record before us that appellant's counsel was permitted to cross-examine the witness as rigidly as he desired.

The next bill is very lengthy, and shows that appellant after recalling the prosecuting witness, asked the following question: "Now, I am not sure, but I believe I asked you the question yesterday, if you didn't tell Mr. Grimes that you were in the condition, with child, I mean, away back more than a year before the time you stated in your testimony yesterday, as the time you first had sexual intercourse with Mr. Grimes: Did I ask you that question?" The State objected to the question on the ground that she had answered it, and it would be but a repetition. The court sustained the objection. Appellant's counsel, counsel for the State and the court had some discussion as to whether the witness had answered the question, and each giving his or their opinion. The bill is very indefinite, but after reading the statement of facts we are of the opinion that if appellant had the purpose and object in view he states in the bill he should have been permitted to ask the question and propound additional questions as to the time the first act of intercourse took place. But in this bill he does not state he could or would have fixed the time of the first act of intercourse as occurring prior to the time she said the engagement to marry occurred, by this witness or any other witness. If the bill stated that he could have secured testimony from this witness or any other witness which would have tended to support a theory that the first act of intercourse occurred prior to the time they became engaged, it would present error, but in the absence of any such allegation in the bill, we would not be authorized to presume that such testimony could or would be elicited. While the young lady appears to have been mixed in giving the year, saying 1909 and 1910, where the record discloses as a whole that the events testified about occurred in 1910 and 1911, this is not surprising as appellant had been gone for three years. However, when the time was fixed that she appeared before the grand jury, made the trip to Houston, where her baby was born, she was definite as to the time occurring prior to those events when all the matters occurred; and her testimony as a whole shows conclusively that, taking these facts into consideration, she fixed the time definitely when the first act of intercourse occurred some time after they had become engaged, and if her testimony is to be believed, she yielded to his persuasions because she believed the engagement would be shortly merged into the marriage relation, and she was led into such belief by the representations of appellant.

As we think the testimony will sustain the conviction, we, of course,

are of the opinion the court did not err in refusing to give peremptory instructions to acquit, and in overruling his demurrer to the evidence. The court instructed the jury:

"By the term 'seduction' as used in this charge, is meant, to lead an unmarried female away from the path of virtue.

"Before a conviction can be had in this case, you must believe from the evidence, beyond a reasonable doubt, the four following propositions:

"(a)   That the defendant had sexual intercourse with Rebecca Stripling in Nacogdoches County, Texas, at some time within three years before the date of the filing of the indictment in this case.

"(b)   That the said Rebecca Stripling consented to said act of intercourse, if any, upon the sole ground of a promise of marriage made to her by the defendant, W. D. Grimes, at the time or before said act of intercourse, if any, and that such act of intercourse was not indulged in by the said Rebecca Stripling, if it was, on account of desire on her part, lust, passion, or other consideration than a promise of marriage.

"(c)   That at the time of such sexual intercourse, if any, the said Rebecca Stripling was under the age of twenty-five years.

"(d)   That at the time of the said act of intercourse with the said W. D. Grimes, if there was such, that she, the said Rebecca Stripling, was a virtuous female, that is, that she. had never had sexual intercourse with any man up to said time.

"If you do not find, beyond a reasonable doubt, each and every one of the above four propositions to be established, by the evidence, you will return a verdict of not guilty in this case, as the State must establish not only one but all of said four propositions, beyond a reasonable doubt, before a conviction can be had in this case.

"A conviction can not be had upon the testimony of an accomplice alone. You are instructed that the witness Rebecca Stripling is an accomplice. Now, you can not convict the defendant upon her testimony alone unless you first believe that her testimony is true and connects the defendant with the offense charged, and then you can not convict the defendant upon said testimony unless you further believe that there is other testimony in the case corroborative of the accomplice's testimony, tending to connect the defendant with the offense charged; and the corroboration is not sufficient if it merely shows the commission of the offense charged."

This charge on accomplice testimony was specially laid down and approved by this court in a case of seduction. Campbell v. State, 57 Texas Crim. Rep., 301; Slaughter v. State, 76 Texas Crim. Rep., 157, and authorities cited. The court, having instructed the jury as he did, it was not error to refuse the special charges requested on this issue, and as the main charge of the court presented every theory of the case, there was no necessity to give any of the special charges requested.

There was no proof offered in regard to the allegation in the motion for a new trial alleging misconduct of the jury. No affidavits in support of such allegation are appended to the motion, and if any evidence

.was offered on the hearing of the motion, it is not in the record. The court in his order overruling the motion says "he heard the evidence submitted thereon," and appellant, if he expected us to review that ground of the motion, should in a proper bill of exceptions have included that testimony in the record.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### April 21, 1915.

PRENDERGAST, PRESIDING JUDGE.—Appellant presents again as grounds for rehearing and reversal several of those presented in the original submission. We have again reviewed the record and reconsidered these grounds. They were all correctly disposed of in the original opinion. However, he has filed a brief on only some of these questions, earnestly contending that the court was wrong in affirming the judgment and still insists that on these grounds urged the judgment should be reversed. . We have carefully considered his brief and argument on them. But will further review .those thus presented.

In his first he again urges that the court committed reversible error in overruling his application for a continuance. This was sufficiently stated in the original opinion. His bill on this subject is based on the absence of Mrs. Stone and Mrs. Scott only. Therein he does not give either the whole or the substance of his motion for a continuance, nor does he refer to nor make the application a part of his bill. However, the original motion is in the record and, in passing upon the question, we considered it, although irregular. We do so again now. It shows that it was made on account of the absence of twenty-three witnesses, including said two. It further shows that the testimony of a large number of the others was very material to him and would in fact have presented a complete defense if they would testify what he said in his application they would. The record further discloses that the attendance of most, if not all of these other witnesses, was secured pending the trial, but that he failed to introduce a single one of them. His application further shows that he expected to prove by Mrs. Medford that the prosecuting witness in talking over her misconduct with defendant told her mother in her presence that she had been carrying on such conduct for more than four years before that time and "by the witnesses Mrs. Stone and Mrs. Scott defendant expects to prove substantially the same facts as set up as to the witness Mrs. Medford." That each of these witnesses had been subpoenaed; that "Mrs. Stone is sick and unable to attend court *as is shown* by certificate of Dr. Barnum, marked exhibit I, and by Dr. Tucker, marked exhibit J; that Mr. Medford says his wife is too sick to attend court." It will be seen by this that appellant did not purport to have any knowledge on the subject himself but depended solely upon the certificates of said doctors as to Mrs. Stone's illness. The certificates of said doctors are not attached to said motion, nor do they anywhere appear in the record.

It will be seen also that the motion nor record elsewhere discloses why Mrs. Scott was absent. The record also discloses that no process whatever was afterwards issued for Mrs. Scott, nor any of the others as to that matter. The State says they lived in four or five miles of the courthouse. The trial continued for a sufficient length of time, so that the slightest diligence for process would have doubtless secured the attendance of Mrs. Scott in time to have testified. It is shown that Mrs. Medford's attendance was procured during the trial and that appellant did not introduce her as a witness at all. For aught that this record shows the certificates of the doctors were wholly insufficient to show that Mrs. Stone was unable to attend court by reason of sickness; they may have shown to the trial judge the reverse of this. The trial seems to have been concluded on September 23, 1914. Appellant's amended motion for new trial was not filed until October 17, 1914, and acted upon three days later by the court. No affidavit of Mrs. Scott nor of Mrs. Stone was filed showing that they or either of them would testify as claimed by appellant. Under all the circumstances this was material, if for no other purpose, to show appellant's good faith in attempting to secure a continuance on account of their absence. Not having had Mrs. Medford to testify at all after her attendance was secured and no affidavit of the others being attached showing that they would testify as claimed by appellant, clearly from this and all the other facts, the trial judge could properly conclude, as he doubtless did, that neither of the absent witnesses would have testified as claimed by appellant. In Mitchell v. State, 36 Texas Crim. Rep., 278, this court, through Judge Hurt, said:

"Moreover, we would remark as to the Harris County witnesses that one of them, towit, Chancery, by whom, according to appellant's application, testimony of a more material character for appellant could be elicited than by either of the other witnesses, that before the beginning of the argument in the case, said witness was produced and brought into court, and no effort was made on the part of the appellant to avail himself of his testimony. If appellant failed to avail himself of the best witness he had, according to his affidavit, when it was within his power to produce them before the jury, we can not reasonably presume that he would have used the other witnesses had they been present." See also Blain v. State, 34 Texas Crim. Rep., 448; Treadway v. State, 65 Texas Crim. Rep., 208, 148 S. W. Rep., 659. Under no circumstances does the overruling of appellant's motion for continuance show any reversible error.

Appellant next urges that the trial judge committed reversible error in the colloquy which occurred between appellant's attorney, the State's attorney and the trial judge when he asked the State's witness, Miss Stripling, if she was capable of experiencing sexual desire the first time she had sexual relations with defendant, and the colloquy which occurred the next day after Miss Stripling had testified and the State had closed its case when he asked her again the same question he had asked her before in his cross-examination. We think these matters were

sufficiently stated and correctly decided in the original opinion. Appellant now urges both and discusses them together, and as we understand, practically bases his whole contention on his claim that what the judge said at the time was a comment by the judge on the weight of the evidence, and cites several authorities showing that where this is the case and is prejudicial, it presents error. The legal proposition he asserts is a correct one, but its application to this case is quite a different thing.

What we said in the original opinion we think disposes correctly of this first question as to whether or not the prosecuting witness was capable of experiencing the sexual desire, etc., and there is no necessity to further discuss that. As to the second question as to appellant asking the prosecuting witness whether he asked her the same question the day before, we will state this matter a little more fully. In allowing appellant's bill on the subject, the judge said he approved it with reference to the statement of facts and particularly all testimony contained therein on this point. Hence, we go to the statement of facts. It shows that the State introduced the alleged seduced girl, Miss Rebecca Stripling, as its first witness. Her direct testimony outside of proving up a large number of letters written to her by appellant, was not lengthy. The cross-examination by appellant shows to have been quite extensive and searching. On this subject it shows that the appellant had her to testify that she wrote some letters to him. Then he asked her if in one of these she did not tell him that she was pregnant, "away back one year before this occurred, about?" The State objected to proving the contents of the letter, claiming the letter was the best evidence. The court sustained that objection. Then the statement of facts shows that this occurred (S. F., pp. 23-24):

"Q. I will ask you if you didn't have a conversation with Mr. Grimes in which you told him you were in that condition more than one year before, and try to get Mr. Grimes to marry you, more than a year before you were in that condition, actually? A. Say I wrote him a letter saying that? Q. No, ma'am, I asked you that a while ago and the court said you couldn't answer it; now, I am asking you this question, I asked you if you didn't have a conversation with Mr. Grimes in which you told him that you were in that condition and wanted him to marry you, more than a year before you were actually in that condition? A. No, sir, I did not."

Some time the next day after the State had concluded its evidence and rested, the appellant called Miss Stripling back to the stand for further cross-examination, as he stated. After asking her about other matters this occurred (S. F., p. 142): "Q. Now, I am not sure, but I believe I asked you the question yesterday, if you didn't tell Mr. Grimes that you were in the condition, with child, I mean, away back more than a year before the time you stated in your testimony yesterday as the time that you first had sexual intercourse with Mr. Grimes; did I ask you that question yesterday? State: We object to it; she has answered the question. Court: Yes, she was asked that yesterday and she said she didn't tell him. Defendant: Then, I want to ask the

question again. State: We object to that, for it is just repetition, if the court please. Court: Yes, I am sure she answered the question, judge. Defendant: I want to ask the question again, if the court please, for I am sure she didn't answer it like the court says she did. Court: The objection will be sustained; there is no question but what she answered it yesterday; you asked her the question and she answered it. Defendant: We except to the ruling of the court. We were studying about that last night, and my recollection is that she answered to the contrary to what the court understood. State: She answered positively that she did not. Court: I think she did; you can have the benefit of it, judge, and the objection will be sustained. Defendant: We except to the ruling of the court."

This was not and can not be construed to be a discussion or comment upon the weight of the evidence by the trial judge. It shows simply that when appellant sought to ask the witness again, in substance, if not precisely, the same question he had asked and she had answered the day before, the State objected because it was a repetition. The appellant claimed, not that he had not asked the same question in substance the day before, but that she had not answered as the court and State said she had. As the objection to the question was made, it was necessary for the court to act upon the objection. He did so by stating what was a literal fact that she had answered the question and in the way the court stated she had. This was no comment whatever by the court on her testimony or the weight of it. In no way did it indicate to the jury whether the judge believed or disbelieved what the witness had testified. In no way did it indicate whether it was material or immaterial or had any bearing on the case. He merely stated what the witness had testified. In quoting from the testimony above, it is shown that the judge was exactly and literally true in his statement. Even if it could be construed as on the weight of the evidence, what was said by this court by Judge Davidson in Newman v. State, 64 S. W. Rep., 258, is applicable. After citing article 787, C. C. P., he said: "Construing this article it has been held that remarks of the court as to nature and weight of evidence will not be ground for reversal where the character of the testimony and its materiality to the case is not shown and it is not made to appear that probable injury was done by the remarks. Stayton v. State, 32 Texas Crim. Rep., 33, 22 S. W. Rep., 38; Chalk v. State, 35 Texas Crim. Rep., 116, 32 S. W. Rep., 534; Thompson v. State, 35 Texas Crim. Rep., 352, 33 S. W. Rep., 871; White's Ann. Code Cr. Proc., secs. 945-946 for collation of authorities."

The trial court must necessarily have a large discretion in refusing to permit the asking of a witness over and over the same question. This record shows, as stated, that this witness was asked this question specifically, and specifically answered it, as the court said she did when appellant the next day attempted to ask her precisely, in substance, the same question. If the court had no such discretion then there would practically be no termination to the examination and re-examination of every witness on every question over and over again. We think under

the circumstances of this case the court properly exercised his discretion
and what the judge said presented no error that would authorize a
reversal.

The appellant again urges that the lower court erred in refusing to
give his special charge No. 5, shown by his bill No. 13. Appellant
claims that we did not dispose of this matter in the original opinion.
We think we clearly did so, for on the point we quoted the charge of
the court and then stated: "The court having instructed the jury as
he did, it was not error to refuse the special charges requested on this
issue and as the main charge of the court presented every theory of the
case, there was no necessity to give any of the special charges requested."
However, as appellant again presses the point, we will further discuss it.

The State, in the original submission of the case, urged that neither
appellant's said requested charge No. 5, nor his bill to the refusal of
the court to give it, in any manner explained when it was presented to
the court for his action; and claimed that under the statute and the
uniform decisions, this court could not consider the question. The
State's contention was true, for neither the requested charge nor the
bill to its refusal states when it was presented to the court for his
action nor when he acted thereon. This was necessary under the uni-
form construction of the statute. Ross v. State, 75 Texas Crim. Rep.,
59, 170 S. W. Rep., 306. This alone would be a complete answer to
appellant's assignment of error on this point. However, in the original
opinion we treated the matter as if the charge or bill showed that it
had been presented to the judge and acted upon by him at the proper
time. This requested charge is to this effect: That if Rebecca Strip-
ling permitted defendant to have sexual intercourse with her for any
other reason than a promise previously made by him to her to marry
her and that she in good faith relied on such promise and for that reason
alone permitted him to have sexual intercourse with her, or if she per-
mitted such intercourse partly on such promise of marriage and
partly to satisfy her own lust or sexual desire, or if she permitted it
partly on account of faithfully relying on his promise to marry her
and partly because he told her he would protect her and would use a
rubber shield, to acquit him. We think the court properly refused this
charge, if for no other reason, because it was based on questions not
raised by the evidence and they were all coupled up together so that
the charge should not have been given. It is the settled law of this
State that wherever the charge of the court submits in a proper way
the questions raised by the evidence that he should refuse special charges
presenting the same thing or substantially the same thing. Secs. 834-5,
White's Ann. C. C. P. As stated, we copied only part of the court's
charge, but even in the part of it quoted, it is shown that the court
told the jury in plain unequivocal language that before a conviction
could be had they must believe from the evidence, beyond a reasonable
doubt, four things, enumerating them. By one (b) that Rebecca Strip-
ling consented to said act of intercourse, if any, upon the *sole* ground
of a promise of marriage made to her by the defendant at the time or

before the act of intercourse, if any, and that such act of intercourse was not indulged in by her on account of *a desire on her part, lust, passion or other causes than a promise of marriage.* And then told the jury (6) if you do not find beyond a reasonable doubt each and every one of the above four propositions to be established by the evidence you will return a verdict of not guilty, as the State must establish, not only one, but all of said four propositions beyond a reasonable doubt before a conviction can be had. And in a separate paragraph submitted the case to the jury for an affirmative finding, telling them that if they believed from the evidence beyond a reasonable doubt that defendant did, about the time charged in the indictment, seduce Rebecca Stripling, etc., and have carnal knowledge of her, etc., to convict him and assess his penalty. And further told the jury that they were the sole and exclusive judges of the facts proved, the credibility of the witnesses and the weight to be given to the testimony. We state again that as the court in the main charge presented every theory of the case it was not error to refuse to give said special charge,

It is not necessary to give a full statement of the evidence. The State's evidence and especially of the seduced girl properly corroborated, as it was, was amply sufficient to establish appellant's guilt and authorize the jury to convict him. The fact, if it be a fact, that Miss Stripling was indefinite or uncertain as to dates or contradicted herself, would be no ground for this court to disturb the verdict. Her veracity and accuracy was for the lower court and jury, not this court. The jury saw and heard her, and her manner of testifying and the examination and cross-examination of her, and the argument of the respective attorneys, especially that of appellant showing her contradictions and seeking to have the jury to disbelieve her. Doubtless it was all presented by appellant's able attorney and perhaps answered by the State's attorney. At any rate, it was for the jury and the lower court and they believed the testimony which they had the right to do. Kearse v. State, 68 Texas Crim. Rep., 633.

The motion is overruled.

*Overruled.*

DAVIDSON, JUDGE (dissenting).—I have been unable to agree with my brethren in the affirmance of this case, and in stating my reasons shall not discuss the majority opinion but treat the case from my understanding of the record.

The alleged seduced woman was Miss Rebecca Stripling. Her testimony shows the engagement between herself and appellant occurred in June or July, 1909, and he continued to wait on her *"for three or four months."* She says, "When we become engaged to be married some time in June or July, 1909, the time for the marriage was for some time during Christmas. That was the following Christmas from then. We didn't get married at that time. . . . Mr. Grimes, the defendant, did have sexual intercourse with me. I don't remember exactly the first time that he ever had intercourse with me. I suppose it was

about six weeks before the time we were to be married in Christmas.
. . . He had intercourse with me the same year that we had become
engaged; it was not the year following the engagement that we had the
intercourse the first time. *He promised that we would marry and that
he would shield me from having anybody to know it.* . . . After
this act of intercourse took place, something finally become wrong with
me as a result of it. I informed the defendant that I was in that con-
dition. I then requested him to make good his promise of marriage
to me. When I did that he made some other promise, I don't hardly
know what it was; *he promised me he would see me through.* . . . I
can not remember just the last time I saw him before he left, but I
think it was some time the last of January, or some time in February,
I don't remember. *That was in 1910.* Q. 1910 or 1911? A. *1910.*
. . . I gave birth to a child. *I gave birth to the child in 1910.
It was in 1910.* It was on the *7th day of May, 1910. It wasn't May of
this year, but 1910. That child wasn't born this year.* . . . I have
testified here that I gave birth to a child and that is right. I have also
testified that it was Mr. Grimes' child. I have also testified that I
gave birth to that child in Houston. I don't know where that child is
now. The last time that I ever heard of that child it was still in
Houston. I haven't done anything to find out about it since. I never
did see the child. I don't know how long it was after Dennis Grimes
had carnal knowledge with me before that child was born, I suppose
about one year, or something like that. I know the first time that
Dennis Grimes ever had sexual intercourse with me. As to the day
of the week that he first had intercourse with me, it was on Sunday.
It was in the daytime. I don't remember just when that was. I don't
remember just exactly when it was. I had never had sexual intercourse
with anybody before. But I can't give the day or the month that I
first had sexual intercourse with a man. I can't give the day nor the
month. As to the year, I think it was some time in 1909, as well as I
remember. *It was in the winter. I am sure it was in the winter. The
first time I ever had intercourse was with Dennis Grimes, and it was
in the winter of 1909.* I wouldn't attempt to tell the jury what month
it was in. When we first had intercourse we were somewhere on the
road out in the country somewhere, I don't remember just where now
I don't remember just where it was. . . . I didn't yield to him be-
cause I had any desire whatever for sexual relation. I suppose this
relation existed between the defendant and me after the first time for
about six weeks or two months, something like that. After the first
time he had sexual intercourse with me, I think he continued to have
such relation with me for about two months, something like that. From
the beginning of the time that he had sexual intercourse with me up
to the last time he had such relation with me, I am sure was within a
space of two months. I don't think it would be any more than two
months. I have said that the first act of intercourse took place in 1909.
I haven't said it was in December, 1909, and it wasn't in December.
I said it was in the winter time. The first act of intercourse I ever

had with the defendant was in the winter time, some time in the winter time. . . . At the very first time that the defendant, Dennis Grimes, had sexual intercourse with me, as to whether or not he made an entrance, I suppose he did. I say I suppose he did, because I don't know whether he did or not. I don't know whether he made an entrance or not. I didn't become enceinte the first time he had intercourse with me. I know that I didn't become pregnant the first time he had sexual intercourse with me. As to whether or not there was anything said between Dennis Grimes and me the first time he had intercourse, about a rubber shield, I remember he said something about it; something about a rubber shield to protect me, but I don't know what it was he said, though. I said something about it, too. I surely said something about it. As to whether or not he used such a thing, I know he said he used it, and that is all I know about it. I didn't see it. I didn't have my hands on it. He did not continue to use those rubber shields all of the time. He used them part of the time but he didn't use them all of the time. I have not made any inquiry at all about my child since it was born."

She swears positively as to the engagement in June or July, 1909, and that some time in the following winter of 1909—not in December— he had the first act of intercourse with her and about six weeks before Christmas, 1909, and this continued for six weeks or two months, and that her child was born on the 7th day of May, 1910. Her testimony was not shaken upon this idea. She further testified that she went to Houston in company with Dr. Shadden of San Augustine, she and her family living in Nacogdoches County. Accompanying her and Dr. Shadden was her relative, Sam Stripling. Dr. Shadden was not the family physician, and lived in a different county. He testified that he went with the girl and her relative to Houston. That he did not know whether she was pregnant or not, except what she stated. That he made no examination of her, but he went with her to a maternity home in Houston and returned to San Augustine. It was at this maternity home or rescue home that she says the child was born. That she had never heard of it since, and has made no inquiry about it. There was some question also raised as to the age of the prosecutrix. She testified she was born on the 3rd of December, 1885. Her mother, and perhaps her father, first testified she was born on the 3rd of December, 1883. Then said they were mistaken, that it was the 3rd of December, 1885. If she was born in December, 1883, she was over twenty-five years of age. If she was born in December, 1885, she was just under twenty-four years of age at the time she says she was seduced in the winter of 1909. Why Dr. Shadden was selected to go with her to Houston and the purpose of that is not explained, but stated as a fact. Nobody except herself testified with reference to the birth of the child. Her mother testified that she suspected her pregnancy, which the girl at first denied but finally admitted, and it was after this conversation that she went to Houston. There is no evidence in the record as to the birth of the child in Houston outside of that of the prosecutrix.

There is testimony to the effect that this trip to Houston was in 1911 instead of 1910. Dr. Shadden so testified. Upon this point the testimony of the prosecutrix and that of the other witnesses is sharply at issue. She testified that the child was born in May, 1910, and not 1911, and adhered to it and never changed her testimony through all the examinations and cross-examinations. There was a witness used who testified that he carried appellant out of Nacogdoches County in a buggy to some railroad point a few miles away in another county. This witness testified while en route he, appellant, said he was leaving because they were trying to get him in trouble about this girl, and that he had heard that she had trouble with some man, or perhaps was pregnant, or words to that effect, but he had nothing to do with it and was not responsible for it, but was leaving until the thing blew over.

There were numerous letters introduced, which the girl testified were written her by appellant. The verity of those letters or their genuineness depended upon her testimony. Some of them contained expressions of endearment and love and matters of that sort, but none of them referred to anything in the slightest way dishonorable. There is a considerable amount of testimony to the effect that other young men went with her, whose names are all mentioned, and one lived on the place who left. He was attentive to the prosecutrix also. She admits all this in her testimony. But her testimony indicates that appellant went with her more than any one of the others. This may be a sufficient statement of the facts for what I desire to write.

It is contended this evidence is not sufficient. This contention I believe should have been sustained. Her evidence makes it certain that her intercourse with appellant happened in the *winter of 1909,* after the engagement in the previous June or July, and that her child was born on the following 7th of May, 1910. If he was engaged to her in June or July and did not have intercourse with her until the winter of 1909, or even before the month of December, 1909, as she says it did not occur that month, the child being born on the 7th of May, this would preclude the idea that it was the offspring of appellant. If the intercourse occurred about six weeks before Christmas, 1909, as her testimony would indicate, it is evident that some other party had had intercourse with her prior to that time and was the father of her child. From that viewpoint this could not be a case of seduction. If the child was born on the 7th of May, 1911, then, as a matter of course, it was not appellant's child, because he ceased to have intercourse with her in the winter of 1909, and the girl swears positively he only had intercourse with her for about two months, when that relation ceased between them, and that was in the winter of 1909. So it would make no difference from any viewpoint of her testimony, the child could not be that of appellant, and she swears positively that appellant was the father of her child, and says he was the only man who had intercourse with her. The State undertook to shake her testimony and show it was not in the winter time but prior to that that the intercourse occurred, but she declined positively to make such statement, and swore

it was in the winter time, and that her child was born on the 7th day of May, 1910. So, as I understand this record, accepting her testimony as true in every respect, except as to the year, that she was mistaken as to the time of the engagement, and that it was 1910 instead of 1909, though she states emphatically it was 1909, from that viewpoint this case is unexplainable upon any hypothesis that would lead to the crime of seduction on the part of appellant, but if we look at the facts from the standpoint of the prosecutrix and the prosecution, and her statement of the time of the engagement, and the time she repeatedly says was the time of the first act of sexual intercourse, and the time that her child was born, still appellant would not be guilty of the crime of seduction from the State's own testimony as detailed by this girl. If she was engaged to appellant, as she states, in June or July, before the child was born the following 7th of May, and that she had intercourse with him the first time in the winter time, whether it was in the winter time of 1909 or 1910, and the child was born the following 7th of May, whether 1910 or 1911, appellant would not be the author of her shame and could not be. Some other man had a hand in the business. She could not be engaged any year in June or July and only have intercourse for the first time the following winter and her child be born on the following 7th of May. This would not make a crime of seduction against appellant. She had been previously intimate with some other party if her testimony is true. Some other man was the father of that child. This would be so in any case except seduction if the laws of nature mean anything. I do not believe that the laws of nature were suspended with reference to this case. It is said that gestation is freaky with reference to the first child, but this case will hardly come within any such peculiarity.

There is a bill of exceptions in this record that in my opinion requires a reversal of the judgment. The matter is made a little prolix by reason of the qualification of the judge. This bill recites the prosecutrix was recalled to the witness stand by the defendant for the purpose of fixing a date and perhaps laying the predicate for impeachment, either or both. She was asked this question: "Now, I am not sure, but I believe I asked you the question yesterday, if you didn't tell Mr. Grimes that you were in the condition, with child, I mean, away back more than a year before the time you stated in your testimony yesterday, as the time you first had sexual intercourse with Mr. Grimes. Did I ask you that question? State's counsel replied, 'We object to it; she answered the question.' The court replied, 'Yes, she was asked that question yesterday, and she said she didn't tell him.' Defendant's counsel then said, 'Then, I want to ask the question again.' State: 'We object to that, for it is just repetition, if the court please.' Court: 'Yes, I am sure she answered the question, judge.' Defendant: 'I want to ask the question again, if the court please, for I am sure she didn't answer it like the court says she did.' Court: 'The objection will be sustained; there is no question but what she answered it yesterday; you asked her the question, and she answered it.' Defendant: 'We

excepted to the ruling of the court. We were studying about that last
night, and my recollection is, she answered to the contrary, to what the
court understood.' State: 'She answered positively she did not.'
Court: 'I think she did; you can have the benefit of it, judge, and the
objection will be sustained.'

"On the previous day prosecutrix was asked the following question,
on this same line, and gave the following answers: Q. 'I will ask you
if you didn't have a conversation with Mr. Grimes, in which you told
him that you were in that condition, more than a year before, and try to
get Mr. Grimes to marry you, more than a year before you were in that
condition, actually?' A. 'Say, I wrote him a letter saying that?'
Q. No, ma'am, I asked you that a while ago, and the court said you
couldn't answer it; now I am asking you this question, I asked you, if
you didn't have a conversation with Mr. Grimes, in which you told him,
that you were in that condition, and wanted him to marry you, more
than a year before you were actually in that condition?' A. 'No, sir;
I did not.' Q. 'Do you remember about telling him that you were
walking to Melrose, or did walk to Melrose instead of riding, thinking
that perhaps it would bring back your natural monthly period?' A.
'Why, I walked over there one day, but I did not go for that purpose.'
Q. 'I asked you if you didn't remember telling him that you did, and
for that purpose?' A. 'Yes, I do remember that, yes, sir.' Q. 'Now,
do you remember when that was?' A. 'No, sir.' Q. 'Now, you did
tell him, though, that you were in that condition at that time, and that
he ought to marry you?' A. 'Why, sure, I told him that.' Q. 'And
whenever that was, these things did take place, and you told him that?'
A. 'Yes, sir; I did.'" The bill is very lengthy, and the court signs
the bill with this statement: "This bill of exceptions is approved by
reference to the statement of facts in this case, and particularly all
testimony contained on these points." Now referring to the statement
of facts, as the trial judge says must be done, on this question, I find
it in this condition: "Now, you wrote Mr. Grimes one letter in which
you told him that you were in that condition, away back one year before
this occurred, about? State: We object, the letter would be the best
evidence. Court: Yes, I think you would have to show about the
letter—account for it. Defendant: Yes, sir; all right, we except to
the ruling of the court. Q. I will ask you if you didn't have a con-
versation with Mr. Grimes in which you told him you were in that
condition more than one year before, and try to get Mr. Grimes to
marry you, more than a year before you were in that condition, actually?
A. Say, I wrote him a letter saying that? Q. No, ma'am, I asked
you that a while ago and the court said you couldn't answer it; now I
am asking you this question, I asked you if you didn't have a conver-
sation with Mr. Grimes in which you told him that you were in that
condition and wanted him to marry you, more than a year before you
were actually in that condition? A. No, sir; I did not. Q. Do you
remember about telling him that you were walking to Melrose, or did
walk to Melrose instead of riding, thinking that perhaps it would bring

back your natural monthly period? A. Why, I walked over there one day but I didn't go for that purpose. Q. I asked you if you didn't remember telling him that you did and for that purpose? A. Yes, I do remember that, yes, sir. Q. Now, do you remember when that was? A. No, sir. Q. Now, you did tell him, though, that you were in that condition at that time and that he ought to marry you? A. Why, sure I told him that. Q. And whenever that was, these things did take place and you told him that? A. Yes, sir; I did."

These statements are copied from the bill of exceptions and statement of facts, to which the trial court referred. This makes it evident the court would not permit the defendant to prove that the girl had written the letter inquired about. I think he ought to have been permitted to prove that, but when the court ruled that out appellant then sought to prove that more than a year before her engagement or intercourse she had a conversation with appellant in which she told him of her condition, and wanted him to marry her; but she replied, no, she did not have such a conversation. But following this she did admit and state she went to Melrose and walked but not for the purpose of bringing on her monthly period, but she did walk over there, and that she told appellant about her condition, and wanted him to marry her. She says, "Why, sure I told him that," and that these matters occurred between them. Now from reading this statement of facts the ordinary mind would reach the conclusion that it left the date of that conversation in doubt. She first denied that she had had a conversation with appellant about a year before, but upon further examination she admitted she had such conversation with him, and that she had walked to Melrose. She was called back to the witness stand to fix that date. The court, before the jury, refused not only to let appellant fix a date, which he had a right to do, it being one of the most important questions in the case, but informed the jury that she had denied the whole thing, therefore not only refusing to let him fix the date, but stated himself that the witness had denied the whole thing. If this is not an expression on the part of the court as to what the testimony of this witness was, and against the facts to which he refers, then the writer does not understand this record. She admitted and testified as shown by the bill of exceptions and by the statement of facts that she had such a conversation with appellant, and all through the questions and answers the intimation and indication is that it occurred long prior to the time that she states the engagement or intercourse occurred. The court's statement in the presence of the jury, and in answer to defendant, refusing to let him go into these questions, that she had denied the whole thing, and would not let the matter be investigated both as to the conversation as to the date of it, was unauthorized. The writer does not understand that there could be a much more important question in this case. If the witness would have located that conversation as this record would seem to indicate as being prior to the time of the engagement, as she was then charging him with having had intercourse

with her, from which she was pregnant and asking him then to marry her out of it, it would be the most important and cogent testimony. That if true, would show beyond any question that the illicit relations between them had occurred long prior to the engagement in 1909. If the illicit relations were then existent and she thought she was pregnant, and she was trying to induce him to marry her, whether pregnant or not, it would indicate and show to the jury that this illicit relation existed without any reference to the subsequent promise of marriage. I can imagine no more important fact in the case than this particular fact, especially under the circumstances shown by this record. Not only that, but the statute prohibits the judge from giving his views of the testimony, or his statement about it or comment on the weight of it. The statute prohibits the trial judge from making such comments. The record shows she made the statements with some doubt as to the date of the conversation, and the court used the first answer and stated she did not make such statement, when later she did, and refused appellant the right to investigate the matter and fix the date. This, it occurs to me, is an error of the most serious nature. If the girl had, as anticipated, and as this record indicates, testified that this conversation occurred prior to her engagement in June or July, 1909, which she stated as a fact, this case of seduction would have passed out under such conditions it could not be seduction. An unchaste woman can not be seduced, and if appellant had had intercourse with her prior to the engagement, that engagement did not and could not make it a case of seduction, although he may have subsequently had intercourse with her. If the trial judge wanted to testify about this matter he should have taken the witness stand, to sustain her as he understood and not announced the fact as judge from the bench without permitting the examination of the witness as to the condition of things. He was not the witness; the woman was the witness.

There is another matter that, in my judgment, shows error. Prosecutrix was asked by appellant on cross-examination if she had ever had sexual relation with any man except defendant, to which she replied she had not: That on the occasion of their first act of intercourse they got out of the buggy and went some thirty or forty steps into the brush and there had the intercourse. Appellant's counsel then asked this question: "Did you have any sexual desire?" The State objected. Defendant's counsel then asked this question: "Did you have any sexual desire for him, the defendant?" This was objected to, and the objections were sustained. This all happened on cross-examination and was legitimate, and should have been permitted. The sexual intercourse matter was a serious one in the case, of course, and without which there could be no seduction, and the relation of the parties and her mental and physical condition at the time were important matters. She testified that he agreed to protect her from any consequences of the act, and would use a rubber shield so as to insure that protection. Now, on cross-examination he should have been permitted to show whether it was a cold-blooded affair or whether she was in love with the man or

had any idea of sexual intercourse with him so far as passion was concerned. It did enter into this case, and was the subject of legitimate examination. This may not have been a very serious matter, but still it should have been permitted. In support of the proposition that the court was in error in his remarks to the jury and in refusing to let appellant fix the date of that prior conversation, a great number of authorities might be cited, but it seems to me it is so well known to the profession and so well settled in the jurisprudence of the State that it is unnecessary to cite them.

There are other matters in the case that I might refer to, but I do not care to extend this matter further. This case ought to have been reversed and appellant awarded another trial.

For the reasons indicated I withhold my assent to the affirmance of this judgment.

[This case did not reach the hands of the Reporter until July, 1915.—Reporter.]